#24250-rev & rem-JKK

**2007 SD 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| GREAT WESTERN BANK, | Plaintiff and Appellee, |
|     v. | |
| H & E ENTERPRISES, LLP and | |
| PHILLIP HINES, | Defendants and Appellants. |
|     and | |
| T. KELLY JOHNSON and MARCIE | |
| L. JOHNSON, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIM D. TUCKER
Judge

* * * *

| | |
|---|---|
| DAVID J. JENCKS of | |
| Jencks & Jencks, P.C. | Attorneys for plaintiff |
| Madison, South Dakota | and appellee. |
| | |
| RONALD A. PARSONS, JR. of | |
| Johnson, Heidepriem, Miner, | |
|  Marlow and Janklow | |
| Sioux Falls, South Dakota | |
| | |
| RICHARD L. ERICSSON of | |
| Ericsson, Ericsson and Leibel | Attorneys for defendants |
| Madison, South Dakota | and appellants. |

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **04/11/07**

KONENKAMP, Justice

[¶1.]    When two experts give contrary opinions on the value of property in a mortgage foreclosure action, is a trial court bound to accept the opinion of one expert?  Here, the court ruled that it had to accept one opinion or the other, even though it believed neither opinion was entirely acceptable.  Because the court misapprehended its role in assessing expert testimony, we reverse and remand for a new hearing under the proper standard.

## Background

[¶2.]    On November 24, 2000, Phillip Hines executed a personal guarantee of $90,748.60 on behalf of H&E Enterprises, LLP.  The guarantee secured the loan obligation of H&E to Security Bank, through its predecessor in interest, Maas Investment Partners.  The loan was also secured by a mortgage on the commercial building and real property at 222 North Egan Avenue in downtown Madison, South Dakota.  Commonly known as the Mason's Building, the property sits on the corner of Egan Avenue and Second Street.

[¶3.]    Over a period of years, H&E Enterprises paid down the principal balance on the loan.  But when the loan matured on December 5, 2005, H&E defaulted.  In February 2006, Security Bank's loan to H&E was assumed by Great Western Bank.  Great Western brought a foreclosure action on the note and mortgage against both H&E and Hines (defendants).  By May 1, 2006, the remaining balance due on the loan was $72,077.95.

[¶4.]    Great Western moved for summary judgment on the amount due on the loan plus interest.  Defendants did not challenge the motion, and the court

granted judgment for $73,911.49, plus interest. Great Western then moved for a court determination of the fair and reasonable value of the property, for the purpose of determining the amount of the deficiency, if any, in accord with SDCL 21-47-16.

[¶5.]    At the hearing, Great Western and defendants each called an expert witness on valuation. Great Western's expert, Norma Goth, took into consideration the condition of the building and the demand for that type of structure. She testified that the fair and reasonable value of the property was $45,000. She used the sales approach, explaining that the cost approach was not reliable because of the building's age. She also thought the income approach was unreliable because, in her opinion, the building was not rentable.

[¶6.]    Defendants' expert, Ted Thoms, used both the cost and income approaches and testified that based on those methods the value of the property was approximately $92,000. However, after Thoms took into account his inspection of the building and other relevant information, he stated that in his opinion the fair and reasonable value of the property was between $75,000 and $85,000 and that he would expect it to sell for $80,000. Defendants also called to the stand Jerry Seidel, the Lake County Director of Equalization. He testified that at the time of his last inspection and appraisal for tax purposes in August 2004, the fair market value of the building was $95,400, and the real estate was $22,100, for a total of $117,500.

[¶7.]    After the testimony, counsel presented their closing arguments to the court. Great Western requested that the court value the property at $45,000, but acknowledged that "the court does have widened discretion here." Counsel for Great Western explained that he "did not believe" the court "has to necessarily

adopt Ms. Goth's appraisals or Mr. Thoms'," as the court "has some latitude in that regard[.]" Defendants' counsel closed by arguing that the value of the property "is certainly not $45,000, and if anything, it's a minimum of $85,000 or higher based upon the evidence presented[.]"

[¶8.]          At the conclusion of the hearing, the court stated:

> I tell you where the court ends up, on this matter the value is presented by expert testimony, the court is bound by the expert testimony. The court can't simply substitute its judgment, and if I could substitute my judgment I would reach something in between, but that's simply the court's opinion, and there's no evidence to support anything in between.
>
> The 80 to 90,000 the court finds is too high. This property was sold, it appears back in 2001 for $74,000. It has depreciated since then, it's been vacant for some years now. It is to some extent falling apart inside. The building's a white elephant.
>
> The court will adopt the appraisal that was established by Ms. Goth as being the best valuation, that being the $45,000. . . . Again, the valuation by Mr. Thoms' office, when the court looked at that the court's first response is wow, that's high. So we'll throw that one out and use the $45,000 figure. Okay. Thank you.

In the court's written findings and conclusions, it reiterated that it was "bound by expert testimony" and "may not simply substitute its own judgment on the matter, as there is no evidence to support the same." Therefore, the court ruled that "$45,000 is the best valuation of the property."

[¶9.]          Contending that the court was not "bound by expert testimony," defendants objected to the findings and offered their own proposed findings of fact and conclusions of law. Specifically, defendants proposed, "[f]or purposes of SDCL 21-47-16, the [c]ourt's determination of the fair and reasonable value of property need not be identical to that of any particular expert so long as it is within

permissible limits and has a meaningful and adequate evidentiary support." The court rejected defendants' proposed findings and conclusions. Defendants appeal, asserting that the court erred as a matter of law when it declared that it was bound by the expert testimony.

## Analysis and Decision

[¶10.]     Whether the court erred in making its declaration about expert opinion is a question of law reviewed de novo. *See* O'Bryan v. Ashland, 2006 SD 56, ¶11, 717 NW2d 632, 636. According to defendants, the court "erroneously held that it had no discretion under the law to vary from the dollar amounts of the appraisals offered by the parties' experts." We have often said that fact finders are not required to accept an expert's opinion.[*] As with all witnesses, it falls on the trier of fact to decide whether to believe all, part, or none of an expert's testimony. Sauer v. Tiffany Laundry & Dry Cleaners, 2001 SD 24, ¶14, 622 NW2d 741, 745 (citations omitted); Lewton v. McCauley, 460 NW2d 728, 732 (SD 1990) (citation omitted). Nothing in SDCL 21-47-16 requires a court to accept one expert's valuation over another. Indeed, when it comes to property valuation, fact finders are not bound to passively "accept *in toto* the testimony of the expert whose testimony in their opinion was entitled to the greater weight." *See* Santa Clara County Flood Control and Water Conservation Dist. v. Freitas, 177 CalApp2d 264, 268 (CalCtApp 1960). As the trier of fact, the circuit court was permitted to weigh and evaluate the expert opinions with their supporting data and take such parts as it saw fit.

---

[*] Some courts recognize exceptions to this rule, but none are applicable here.

#24250

[¶11.]     Great Western argues that regardless of what the court said it "applied the correct burden of proof to the evidence presented by requiring the mortgage holder to show competent proof of the value of the mortgaged premises" and concluded "that the best and most reasonable valuation of the property was $45,000[.]" Great Western further contends that the court's statement that it was bound by the expert testimony "is a proper legal conclusion and application of the law." Specifically, it asserts that the court "was bound to follow the evidence admitted at the hearing by the respective parties and not simply to substitute its own judgment where no evidence supported it." And, in Great Western's view, the court "entered various findings of fact to support why it believed the $45,000 appraisal of Ms. Goth was the best valuation."

[¶12.]     Nonetheless, while we ordinarily defer to a court's fact findings, when those findings are "made under an erroneous view of the law or an incorrect legal standard," they "receive no deference." *See* 1 Childress and Davis, *Federal Standards of Review* § 2.16 (3ded 1999). This rule "is uncontroversially stated in all courts." *Id.* at § 2.16 n1. *See, e.g.*, Pullman-Standard v. Swint, 456 US 273, 287, 102 SCt 1781, 1789, 72 LEd 66 (1982); Vinick v. United States, 205 F3d 1, 6 (1stCir 2000). Here, the court's legal error taints all of its findings. And, the error was more than inadvertent: it was repeated in both its oral remarks and its written findings. Thus, even if the court's ultimate valuation of $45,000 had some evidentiary support in the record, the court's ruling was issued under the false legal premise that it, as the trier of fact, could not conclude that the fair and reasonable value was an amount in between the experts' valuations.

[¶13.] In sum, the circuit court's statement that "there's no evidence to support anything in between" cannot be reconciled with its erroneous declaration that the court is bound by expert testimony. We cannot determine what the court meant when it said first, that it is bound by expert testimony, and then that if it was not bound it would pick a value in between, and finally, that there was no evidence to support anything in between. Therefore, we reverse the court's ruling and direct the court to determine the fair and reasonable value of the property consistent with the correct legal standards.

[¶14.] Reversed and remanded.

[¶15.] GILBERTSON, Chief Justice and SABERS and MEIERHENRY, Justices, concur.

[¶16.] ZINTER, Justice, deeming himself disqualified, did not participate.